59 CCPA

**Application of Kenneth L. RUSSELL.**
**Patent Appeal No. 8634.**

United States Court of Customs
and Patent Appeals.
May 11, 1972.

ent No. 188,590, issued March 20, 1877, to A. W. Coates; and U. S. Patent No. 365,541, issued June 28, 1887, to I. E. Schollars.

Samuel Stearman, Washington, D. C., attorney of record, for appellant; Eric Y. Munson, New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

RE, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 12 and 13 in appellant's application[1] for "Low Eye-Irritation Shampoos." The claims were rejected on the ground that they are unpatentable under 35 U.S.C. § 103.

The invention relates to the use of a particular water-solubilized lanolin oil material to reduce eye irritation and sting resulting from inadvertent contact of the cornea or conjunctiva of the eye by shampoos containing certain synthetic detergents, as reflected in claim 12:

> 12. A hair shampoo preparation consisting essentially of about 10% to about 30% by weight of a water-soluble organic detergent selected from the group consisting of water-soluble anionic and non-ionic synthetic detergents, the said concentration of said detergent being such as would normally impart substantial eye sting and irritation characteristics to said preparation; and an agent for substantially reducing said eye sting and irritation characteristics exhibited by the preparation, said agent consisting of about 1% to 3%, by weight, of lanolin oil solubilized by from 1 to 4 parts, per part of the lanolin oil, of a polyoxyethylene ether of lanolin alcohol ethoxylated with 16 mols of ethylene oxide.

Dependent claim 13 adds that 2–3 parts of an alkanolamide of a higher fatty acid, per part of lanolin oil, are admixed with the polyoxyethylene ether. According to the specification, the alkanolamide contributes to the water solubilization function of the polyoxyethylene ether of lanolin alcohol, and the mixture of the two lanolin solubilizers also helps provide clear, transparent shampoo preparations not obtainable when lanolin oil is mulsified in the detergent solution.

The board affirmed the examiner's rejection of claims 12 and 13 as obvious in view of Wei[2] considered with Wagner[3] and Siegel.[4] Wei discloses aqueous shampoo compositions which contain lanolin oil solubilized by alkanolamides of higher fatty acids. Another solubilizing agent may be combined with the alkanolamide in order that the alkanolamide itself may be sufficiently water-solubilized to form a clear solution, and also to aid in solubilizing the lanolin in the alkanolamide. Among such other solubilizing agents, a class of nonionic surfactants or detergents known as "polyoxyethylene ethers of higher aliphatic alcohols" is mentioned. According to Wei, lanolin had been extensively used in suspended or emulsified form in vari-

1. Serial No. 467,764, filed June 28, 1965.

2. U.S. Patent No. 2,900,307, issued August 18, 1959.

3. "Lanolin Derivatives", American Perfumer, Vol. 75, pp. 23–26 (July 1960).

4. U.S. Patent No. 3,101,300, issued August 20, 1963.

ous cosmetic preparations because of its emollient characteristics, prior to his discovery of a way of water-solubilizing it. Wei employs .05 to 5% by weight lanolin in his composition, together with 0.25 to 20% by weight alkanolamide and 10 to 30% by weight detergent. He further states:

> \* \* \* A preferred embodiment is a clear transparent aqueous composition comprising about 0.05 to 5%, preferably up to 1%, of lanolin, about 0.25 to 20%, of said amide compound, the ratio of said amide to lanolin from about 2:1 to 100:1 and a minor proportion of a water-soluble organic surface active agent in an aqueous medium. \* \* \*

Wagner discusses lanolin and its various derivatives, including "lanolin alcohols" and "ethoxylated lanolins." He discloses that lanolin alcohols are obtained by hydrolysis of the esters comprising lanolin itself. Under the heading "Ethoxylated Lanolins," Wagner states:

> Water-soluble forms of lanolin are obtained by reacting it with ethylene oxide, thus forming a polyoxyethylene chain. A side reaction takes place simultaneously causing hydrolysis of the lanolin esters and formation of polyoxyethylene glycol ethers of lanolin alcohols. The degree of water solubility of the adduct is determined by the molecular proportion of ethylene oxide absorbed by the lanolin.

Wagner further points out that "ethoxylated lanolins" are non-ionic surfactants which are water soluble, function as solubilizers, "impart emollience in aqueous form and are particularly effective in shampoos."

Like the board, we find it unnecessary to discuss Siegel beyond noting that it describes the use in hairgrooming preparations of polyoxyethylene ethers of higher aliphatic alcohols which include the degree of ethoxylation recited in present claim 12. It also describes "lanolin alcohol" as "an excellent emollient." Appellant does not now appear to rely

on the claimed degree of ethoxylation for patentability, nor did he below.

In light of the disclosures of the references previously outlined, the board stated:

> We can perceive nothing unobvious in the utilization of the "ethoxylated lanolins" of Wagner as the non-ionic surfactant in the Wei composition, particularly since the "ethoxylated lanolins" of Wagner fall within the category of polyoxyethylene ethers of higher aliphatic alcohols named by Wei and Wagner suggests the use of "ethoxylated lanolins" in shampoos. The teachings of the two references fit together perfectly, and the suggestion in one complements perfectly the suggestion in the other.

Recently, in In re Russell, 58 CCPA 1081, 439 F.2d 1228 (1971), this court had before it claims very similar to present claim 13, both in ingredients recited and amounts thereof, which were rejected on prior art including the Wei patent relied on here. All claims on appeal, including claim 1 reproduced in the *Russell* opinion, additionally recited that the composition was initially clear and transparent as produced without requiring filtration. We stated:

> \* \* \* appellant contends that the prior art does not suggest the combining of two lanolin-solubilizing agents, viz., a polyoxyethylene ether of lanolin condensed with 16 mols of ethylene oxide *and* a higher fatty acid alkanolamide. We disagree. Appellant admits that "One of the surface active lanolin derivatives referred to in the Conrad et al publication is polyoxyethylene ether of lanolin alcohol condensed with 16 mols of ethylene oxide." Since Wei teaches that the combining of a higher fatty acide alkylolamide and a surface active agent is desirable, that "any suitable surface active agent may be employed," and that these include non-ionic agents including "polyoxyethylene ethers of higher aliphatic alcohols," it would appear that the mere combining of a

particular higher fatty acid alkanolamide and the surfactant shown in Conrad would have been obvious, in the absence of unexpectedly superior results or other evidence of non-obviousness. There is no evidence here that the mere selection of the ingredients was unobvious.

Appellant seeks to avoid the applicability of that holding to the present situation by arguing, in the first instance, that the "ethoxylated lanolins" of Wagner—the reference the Patent Office has used here in place of Conrad in the previous *Russell* case—are not in fact polyoxyethylene ethers of lanolin alcohols or equitable therewith. It is appellant's position, stated variously throughout his briefs, that Wagner does not disclose, refer to, or otherwise suggest polyoxyethylene ethers of lanolin alcohols, or their use for any purpose.

We cannot agree. Appellant's argument has skirted the pertinent disclosure of Wagner under the heading "Ethoxylated Lanolins," quoted above, and his failure to acknowledge that disclosure here is in marked contrast to the position he took below [5] when Wagner was first cited by the examiner. Manifestly, "ethoxylated lanolins" include a large proportion of polyoxyethylene ethers of lanolin alcohols derived from the hydrolysis of the lanolin esters and concomitant reaction of the resultant lanolin alcohols with ethylene oxide. As in *Russell*, we think that the combining of two particluar lanolin-solubilizing agents—a polyoxyethylene ether of lanolin alcohol and a higher fatty acid alkanolamide— would have been obvious in view of the cited prior art, in the absence of other evidence of non-obviousness.

That brings us to appellant's second line of argument. In the earlier *Russell* case, this court reversed the rejection of the claimed subject matter based on ap-

pellant's rebuttal evidence of non-obviousness directed to the unexpected nature of the clarity "without filtration" feature recited in the claims. The present claims contain no limitation relating to clarity "without filtration," the record is barren of evidence relating to such clarity, and appellant has not relied on that feature to impart patentability to his claims. What appellant does rely on here is another, allegedly unexpected, advantageous property alluded to in claim 12—that the solubilized lanolin oil reduces eye sting and irritation normally associated with hair shampoo preparations.

We do not understand the tribunals of the Patent Office to challenge appellant's assertion, supported by factual and opinion data in his specification, that his shampoos containing solubilized lanolin oils do produce a reduction in eye sting and irritation in comparison with conventional shampoos not containing those particular solubilized lanolin oils. The board was of the view, however, that shampoos containing ethoxylated lanolins would be *expected* to be less irritating in light of Wagner's disclosure that those materials "impart emollience in aqueous form." While appellant fails to see the pertinence or relevance of that disclosure of Wagner to reduced eye sting or irritation, we think that it is pertinent. As noted earlier in this opinion, appellant states that sting and irritation effects are produced on the cornea and conjunctiva areas of the eye. The "cornea" is defined as "The transparent part of the coat of the eyeball which covers the iris and pupil and admits light to the interior. The cornea is covered externally by the ectodermic conjunctival epithelium * * *." Webster's New International Dictionary, 2nd Edition (1954). Similarly, the "conjunctiva" is defined by that authority as "the mucous membrane which lines

---

5. Then appellant stated:

Wagner states (p. 25) that water-soluble forms of lanolin are obtained by reacting it with ethylene oxide, thus forming a polyoxyethylene chain; that a side reaction takes place simultaneously causing hydrolysis of the lanolin esters and formation of polyoxyethylene glycol ethers of lanolin alcohols. * * * such ethers of lanolin alcohols are known, * * *.

the inner surface of the eyelids and is reflected over the forepart of the eyeball, covering part of the sclerotic coat and forming an epithelium over the cornea." Finally, an emollient is a substance which is "soothing to the skin or mucous membrane." In light of those definitions, and the known emollient effect of lanolin, lanolin alcohol and ethoxylated lanolins comprising polyoxyethylene ethers of lanolin alcohol, we think the board's conclusion, that appellant's solubilized lanolin oil would be expected to reduce shampoo irritation and sting of the mucous membranes of the eye, is a reasonable one. Appellant's arguments, unsupported by evidence contrary to the position of the board, have not persuaded us of error in that conclusion.

The decision is affirmed.

Affirmed.